## JAMES K. MILLER v. THOMAS T. LACEY.

### Sale of Personal Property—Fraud Upon Creditors.

To make a sale of personal property valid there must be a valuable consideration paid, or secured to be paid, and an actual delivery into the hands of the purchaser as soon as conveniently may be after the sale is made. Where actual delivery is prevented on account of bulkiness, or other like cause, the property should be placed at once, or with all convenient promptness, within the exclusive power and control of the purchaser.

Although all the requisites of a valid sale be present, yet, if the object of the sale be to delay or defeat creditors or hinder them in the use of the ordinary means for the collection of their debts, it will be void.

To make such a sale invalid it must appear to the jury that the purchaser knew, either directly or circumstantially, that the object of the sale was to prejudice the rights of creditors. And a subsequent purchaser, without the knowledge of the intended fraud, could take no better title than the person from whom he purchased.

In the case of a sale of a stock of goods in a store it is not necessary that all the different articles should be handed over to the buyer by actually placing them in his hands, but delivery may be made symbolically, as by giving him the key of the house or room in which they are stored; and then the control over them by the party selling must utterly cease, and thereafter remain exclusively in the purchaser.

*(Kent, May 5, 1884.)*

REPLEVIN.

Charles H. Benn, of the town of Dover, being the owner of store goods of the value of $200, sold the same to Mrs. Grover Smith, his sister, and George Benn, his brother, the consideration being the payment of his note for $75.00, upon which they were endorsers. The following day the defendant, with an execution upon a judgment at the suit of Louis Bremer's Sons against Charles H. Benn, levied upon the said goods as the property of Charles H. Benn. The plaintiff afterwards purchased the said goods from Mrs. Grover Smith and George Benn, and bring this action of replevin.

*James Pennewill, C. H. B. Day* and *James L. Wolcott*, for plaintiff:

*J. Alexander Fulton*, for defendant:

In every sale of personal property, as against the creditors of

the seller, there must be actual delivery to the buyer, and the possession must be immediately taken and retained by him; and even if possession be given, if the goods come back and remain in the possession or control of the seller, the sale is void. The change of possession must be complete, apparent, continuous and exclusive. It must be such as to give notice to all the world of the new ownership.

R. C., 356 §4; 55 Cal., 254; 32 La. An., 1132; 13 La. An., 595; 19 Cal., 320; 2 W. & S., 147; 6 W. & S., 94; 48 Pa., 413; 27 Wis., 246.

The selling out of a store by wholesale or in a lump, without inventory or appraisement, is contrary to the usual course of business; and when done by one in failing or embarrassed circumstances, is a badge of fraud in itself.

If the sale, or pretended sale, of this store was made by Charles H. Benn to his brother and sister with the purpose or design of hindering, delaying or defrauding his creditors, it was fraudulent and void, and the goods were liable to be seized and sold upon the execution in the hands of the sheriff against Charles H. Benn. And as Miller, the plaintiff in this suit, claims through them, he is in no better position than they would be, and he cannot recover.

Even if Miller after he got possession under this fraudulent sale, if the jury find it was fraudulent, purchased other goods with his own money, and put them in with goods levied on by the sheriff, he cannot recover for them without pointing out to the sheriff *specifically* which they were, and demanding them of the sheriff before suit brought; and, as he did not do this, he cannot recover.

2 Hous., 189, &c.; 5 N. H., 364.

If after the levy by the sheriff, September 1, 1881, Charles H. Benn or any one coming in under him, sold part of the goods levied on and substituted others, the substituted ones were lawfully sold by the sheriff on the execution.

2 John Ch., 62; Herm. Ex., 277; 29 N. Y., 471.

COMEGYS, C. J., charging the jury:

In order to make a valid and perfect sale of property, there

must be delivery of it at the time of the transaction, or as soon thereafter as the circumstances existing will permit. This is the general law with respect to the subject, recognized and acted upon by the courts throughout the country. In order to fully inform the public mind about the requisites of a valid sale, the Legislature of this State re-enacted the principal features of the English statutes of frauds and perjuries and laid down the law of sales by the 4th section of such re-enactment in the following words :

" No sale, whether with or without bill of sale, of any goods or chattels, within this State, shall be good in law, (except as against the vendor) or shall change, or alter, the property in such goods or chattels, unless a valuable consideration for the same shall be paid, or in good faith secured to be paid, and unless the goods and chattles sold shall be actually delivered into the possession of the vendee as soon as conveniently may be after the making of such sale.

" And if such goods and chattels, so sold, shall afterward come into and continue in the possession of the vendor, the same shall be liable to the demands of all his creditors."

To make a sale valid, therefore, in this State, so as to change the property in the articles and vest it in the buyer, there must be an actual delivery into the hands of the purchaser as soon as conveniently may be after the sale is made. Where articles are capable of delivery by hand, and are present at the time of the sale, they should be at once handed over to the buyer. Where they are not present, they should be delivered without any delay except such as their absence necessarily occcasions. Where they are not capable of actual delivery, on account of their bulkiness, or other like cause, they should be placed at once, or with all convenient promptness, within the exclusive power and control of the purchaser, as by the delivery to him of the means by which he may possess himself of them—an assignment of the bill of lading where goods have been shipped, the key of the warehouse where the goods are stored therein, the necessary papers indicating ownership under the law of ships or vessels, and the like.

The object of this enactment is the defeating dishonest sales—that is, pretended sales, where no property was meant to pass to the apparent buyer.

Sales of personal property made *bona fide* and in compliance with our statute, are perfectly valid, though no writings whatever pass between the parties. Necessity for writings in the case of such property does not exist, as in the case of land. The latter being incapable of delivery from hand to hand, it was necessary that some permanent evidence should exist that the ownership was in a particular person. And this the more, because one man may be the owner *bona fide* of it, and another person may be the visible owner having the actual possession. But because of the requirement of writings his visible ownership clothes him with no authority to deal with the title to the land, he not possessing the evidence of that. The case is different with respect to movable property : possession of it is evidence *prima facie* of full ownership. If the real owner of such allow another to have possession of it, and to act and deal with it as his own, he would be denied relief in a court of justice against the act of his depositary in disposing of it as his own property, on the ground that to give it to him would be to operate a fraud upon the innocent buyer.

In the case of a sale of a stock of goods in a store, it is not necessary that all the different articles should be handed over to the buyer by actually placing them in his hand ; but it is necessary that they shall be at once (if they are present), or as soon as convenient (if they are absent), delivered over to him. This may be done symbolically—that is by giving him the key of the house or room in which they are kept, or stored. And then, that the transaction may be free from all suspicion, or defect, the control over them by the party selling must utterly cease and be at an end. In order to place this beyond any boubt, you will observe the provision of the statute—that if the property sold shall afterwards come to and continue in the possession of the seller, it should be liable to the demands of all his creditors. The object was to defeat a fraud, then common and by no means unusual now, of going through the ordinary forms of sale, by payment of purchase money and delivery of goods, or a bill of them, and then taking them back again and using them as before. Of course the fraud of this step existed as well before as after the statute, but there was no definite rule for defeating it. Now, a party claiming goods formerly belonging to another, and claimed by that other's creditors to

still belong to him, must be prepared to show that he gave a valuable consideration, or price, for them either in money or other valuable thing, or secured the same to be paid, and also that possession of the goods was delivered to him as required by the statute, and that he has retained the exclusive control over them since the sale.

This is further law upon the subject of sales. It is not in the form of an act upon our statute book, but is a part of the statute law of the mother country which our forefathers when they came to America as colonists, brought with them, along with what we call the common law, as being suited to their circumstances and condition. It is, that although all the requisites of a valid sale should concur—valuable consideration, and actual delivery without any control or power of it on the part of the seller; yet if the object of the sale is to delay, or defeat creditors, or hinder them in the use of the ordinary means for the collection of their debts, such a sale shall be void. It is in fact as much so as if no delivery of the property at all had taken place. This is on the ground of the intended fraud on creditors; for fraud will vitiate and avoid all transactions, however honest and straightforward apparently. But to make such a sale invalid as against the buyer, it must appear to the jury trying such a question either that he knew that the object of making the sale was to prejudice the rights of creditors, or that circumstances existed of which he could not reasonably be ignorant, which indicated the real dishonest object of the seller. If the jury should find in such case of intended fraud on the part of the seller, either that the buyer had actual knowledge of it, or that the circumstances were such as would fix him with such knowledge, then it will not avail him that he gave the full value of the property, much less if he bought it at a reduced price. The law is very tender and considerate of the rights of creditors, and abhors fraud in every form how speciously honest soever a transaction may be; and will expose, subvert and sweep away all the devices which the ingenuity of rogues and cunning persons can contrive to carry into effect or conceal a fraud, if proof of the unlawful object can be made. It therefore makes no difference, where fraud upon creditors is the object, and is, or should be so understood by the buyer, that the goods he bought were at once

delivered to him as his property and placed under his exclusive control, and that he actually paid their full value for them. The law punishes him by subjecting the property he bought to the claims of the seller's creditors, for his lending himself to the dishonest contrivance of the debtor, his vendor.

This is the law, gentleman of the jury, of this State, and elsewhere in this country. It promotes honesty and fair dealing in the transactions of men in buying and selling, and defeats, when its operation is invoked by him who has been wronged, all the schemes, covers, tricks, contrivances and simulations, however artfully conceived and executed, and with whatever form and ceremony sought to be carried into effect, to cheat and defraud.

Charles H. Benn was in failing circumstances, as he said himself in his testimony on the witness stand, and being possessed of a stock of goods in a store worth, according to the evidence, $200, and his brother, George Benn and sister, Mrs. Grover Smith, being his endorsers on a note in bank for $75, he sold the stock of goods to them the day before the execution was issued. If that sale was fraudulent and void, then Miller, the plaintiff, could not have taken a valid title to them on his purchase of the goods from them afterwards, although he had no knowledge of the fraud when he bought them.

Verdict for defendant.